LISA PRICE-CROWLEY *v.* MICHAEL KOZLOWSKI, COMMISSIONER OF MOTOR VEHICLES
(AC 17258)

O'Connell, C. J., and Spear and Dupont, Js.

Submitted on briefs May 1—officially released July 21, 1998

Jeffrey D. Brownstein and Gregory A. Thompson filed a brief for the appellant (plaintiff).

Richard Blumenthal, attorney general, and Priscilla J. Green, assistant attorney general, filed a brief for the appellee (defendant).

*Opinion*

O'CONNELL, C. J. The plaintiff appeals from the trial court's judgment sustaining suspension by the defendant, Michael Kozlowski, commissioner of motor vehicles, of the plaintiff's license to operate a motor vehicle on the ground that she had operated a vehicle while her blood alcohol content exceeded the statutory limit. General Statutes (Rev. to 1995) § 14-227b, as amended by Public Acts 1995, No. 95-279, § 1.[1] The plaintiff claims

---

[1] General Statutes (Rev. to 1995) § 14-227b, as amended by Public Acts 1995, No. 95-279, § 1, provides in relevant part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine . . . .

"(c) If the person arrested . . . submits to such test or analysis, commenced within two hours of the time of operation, and *the results of such test or analysis indicate that the ratio of alcohol in the blood of such person is ten-hundredths of one per cent or more of alcohol,* by weight, the police officer, acting on behalf of the commissioner of motor vehicles, shall immediately revoke and take possession of the motor vehicle operator's license . . . for a twenty-four-hour period and shall issue a temporary operator's license . . . to such person valid for the period commencing twenty-four hours after issuance and ending thirty days after the date such person received notice of his arrest by the police officer. The police officer shall prepare a written report of the incident and shall mail the report . . . to the department of motor vehicles within three business days. . . .

"(d) Upon receipt of such report, the commissioner of motor vehicles may suspend any license . . . of such person effective as of a date certain,

that the trial court improperly concluded that the police officer who stopped her had a reasonable and articulable suspicion that she had committed or was about to commit a crime so as to justify the administration of roadside sobriety tests. We affirm the judgment of the trial court.

The following facts are necessary for a disposition of this appeal. At approximately 1:52 a.m. on November 24, 1996, a state trooper observed the plaintiff operating a motor vehicle erratically on Interstate 84 in the town of Tolland. The trooper stopped the plaintiff's car and, after checking her license and registration, asked her to exit the vehicle and to perform roadside sobriety tests. As the plaintiff got out of her car, the trooper observed that she was unsteady on her feet. During the roadside sobriety testing, the trooper noticed an odor of alcohol on the plaintiff's breath and, when she failed the roadside tests, he arrested her for operating a motor vehicle while under the influence of intoxicating liquor or any drug in violation of General Statutes § 14-227a (a).[2]

The trooper then transported the plaintiff to the state police barracks, where she submitted to two chemical alcohol tests. Both tests showed a blood alcohol level in excess of ten-hundredths of 1 percent. The plaintiff was subsequently notified by the commissioner that her operator's license would be suspended for ninety days pursuant to § 14-227b (d). She requested an administrative hearing regarding the license suspension. The hearing officer, acting on behalf of the commissioner, found

which date shall be not later than thirty days after the date such person received notice of his arrest by the police officer. Any person whose license or operating privilege has been suspended in accordance with this subsection shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. . . ." (Emphasis added.)

[2] General Statutes § 14-227a (a) provides in relevant part: "No person shall operate a motor vehicle while under the influence of intoxicating liquor or any drug or both. . . ."

that all four license suspension criteria set forth in § 14-227b (f)[3] had been satisfied and ordered the suspension of the plaintiff's license. The plaintiff appealed to the trial court pursuant to General Statutes § 4-183. Following the trial court's dismissal of her case, the plaintiff appealed to this court.

Review of the commissioner's action is highly restricted. *O'Rourke* v. *Commissioner of Motor Vehicles*, 33 Conn. App. 501, 506, 636 A.2d 409, cert. denied, 229 Conn. 909, 642 A.2d 1205 (1994). "In cases involving administrative appeals it is not the function of this court, nor was it the function of the trial court, to retry the case or to substitute its judgment for that of the administrative agency." (Internal quotation marks omitted.) *Redden* v. *Kozlowski*, 45 Conn. App. 225, 228, 695 A.2d 26 (1997).

The plaintiff focuses on the requirement that a police officer have probable cause to arrest an individual for operating a motor vehicle while under the influence of intoxicating liquor or drug. Pursuant to § 14-227b (f), to sustain a license suspension, the commissioner must find, inter alia, that there was probable cause to arrest the individual in question. The plaintiff claims that there was no probable cause for her arrest because the roadside sobriety tests that established such probable cause were unlawful as there was no reasonable and articulable suspicion to require the plaintiff to exit her vehicle and to perform the tests. We are not persuaded.

"A police officer does not need to have probable cause to believe that a crime has been committed in

---

[3] General Statutes (Rev. to 1995) § 14-227b (f), as amended by Public Acts 1995, No. 95-279, § 1, provides in relevant part: "The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for operating a motor vehicle while under the influence of intoxicating liquor or drug or both . . . (2) was such person placed under arrest; (3) did such person refuse to submit to such [chemical alcohol] test or analysis . . . and (4) was such person operating the motor vehicle. . . ."

order to make a lawful stop of a motor vehicle. An investigatory stop is authorized if the police officer had a reasonable and articulable suspicion that a person has committed or is about to commit a crime. *State* v. *Lamme*, 216 Conn. 172, 184, 579 A.2d 484 (1990). Whether a reasonable and articulable suspicion exists depends on the totality of the circumstances. *State* v. *Anderson*, 24 Conn. App. 438, 441, 589 A.2d 372, cert. denied, 219 Conn. 903, 593 A.2d 130 (1991). An investigative stop can be appropriate even where the police have not observed a violation because a reasonable and articulable suspicion can arise from conduct that alone is not criminal. . . . *Kolakowski* v. *Hadley*, 43 Conn. App. 636, 644, 685 A.2d 689 (1996). The purpose of an investigatory stop is to maintain the status quo for a brief period of time to allow the police to investigate the circumstances that give rise to the suspicion of criminal wrongdoing. *State* v. *Anderson*, supra, 441." (Internal quotation marks omitted.) *Costello* v. *Kozlowski*, 47 Conn. App. 111, 115, 702 A.2d 1197 (1997).

Connecticut cases have presumed that roadside sobriety tests are incident to the initial stop, and that chemical blood and breath tests are incident to the arrest. See *State* v. *Hancich*, 200 Conn. 615, 618–19, 513 A.2d 638 (1986); *State* v. *Rutledge*, 17 Conn. App. 250, 252, 552 A.2d 435 (1989); *State* v. *Smith*, 16 Conn. App. 156, 158, 547 A.2d 69, cert. denied, 209 Conn. 820, 551 A.2d 758 (1988).

In the present case, the police officer observed the plaintiff operating a motor vehicle erratically on Interstate 84 at 1:52 a.m. This observation was sufficient to provide the officer with a reasonable and articulable suspicion that the plaintiff was operating a motor vehicle while under the influence of intoxicating liquor or drug. As noted by the trial court, the officer "observed the [plaintiff's] vehicle swerving onto the breakdown lane two or three times. Such erratic operation may be

caused by factors other than alcohol consumption; but alcohol consumption is certainly a reasonable suspicion." The officer properly investigated the circumstances giving rise to his suspicion by administering roadside sobriety tests to the plaintiff. The trial court correctly stated: "Such tests are a more extensive process but analogous to the interview technique of investigation." The fact that the officer chose to administer the roadside tests without first asking the plaintiff if she had been drinking or detecting an odor of alcohol on the plaintiff's breath is of no consequence.

The officer had a reasonable and articulable suspicion of criminal activity that justified the administration of the roadside sobriety tests. Because the results of those tests provided the officer with probable cause to arrest the plaintiff, the trial court properly dismissed the plaintiff's appeal from the commissioner's suspension of her license.

The judgment is affirmed

In this opinion the other judges concurred.