## DARYL O'ROURKE *v.* COMMISSIONER OF MOTOR VEHICLES
### (12118)

O'CONNELL, HEIMAN and SPEAR, Js.

Argued December 6, 1993—decision released February 1, 1994

*Patrick B. Crehan,* for the appellant (plaintiff).

*Robert L. Marconi,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

SPEAR, J. The plaintiff, Daryl O'Rourke, appeals from the trial court's judgment dismissing his appeal from the order issued by the defendant commissioner of motor vehicles suspending the plaintiff's driver's license

for one year pursuant to General Statutes § 14-227b.[1]
The plaintiff claims that the trial court improperly

[1] General Statutes § 14-227b provides in pertinent part: "(a) Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical analysis of his blood, breath or urine . . . .

"(b) If any such person, having been placed under arrest for . . . operating a motor vehicle while under the influence of intoxicating liquor or any drug or both . . . and thereafter, after being apprised of his constitutional rights, having been requested to submit to a blood, breath or urine test at the option of the police officer, having been afforded a reasonable opportunity to telephone an attorney prior to the performance of such test and having been informed that his license or nonresident operating privilege will be suspended in accordance with the provisions of this section if he . . . submits to such test and the results of such test indicate that at the time of the alleged offense the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight . . . . The police officer shall make a notation upon the records of the police department that he informed the person that his license or nonresident operating privilege would be suspended if he . . . submitted to such test and the results of such test indicated that at the time of the alleged offense the ratio of alcohol in his blood was ten-hundredths of one per cent or more of alcohol, by weight.

"(c) If the person arrested . . . submits to such test or analysis and the results of such test or analysis indicate that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight, the police officer . . . shall immediately revoke and take possession of the motor vehicle operator's license . . . for a twenty-four-hour period and shall issue a temporary operator's license . . . to such person . . . . The police officer shall prepare a written report of the incident . . . . The report shall set forth the grounds for the officer's belief that there was probable cause to arrest such person for . . . operating a motor vehicle while under the influence of intoxicating liquor or any drug or both or while his ability to operate such motor vehicle is impaired by the consumption of intoxicating liquor, and shall state that . . . such person submitted to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight.

"(d) Upon receipt of such report, the commissioner of motor vehicles shall suspend any license . . . of such person . . . . Any person whose license or operating privilege has been suspended in accordance with this subsection shall automatically be entitled to a hearing before the commissioner to be held prior to the effective date of the suspension. . . .

"(f) If such person contacts the department to schedule a hearing, the department shall assign a date, time and place for the hearing, which date

(1) applied the clearly erroneous standard in reviewing the defendant's order, and (2) concluded that there was sufficient evidence in the record to find that the plaintiff was operating the motor vehicle. We affirm the judgment of the trial court.

The following facts are pertinent to our resolution of this appeal, which challenges the defendant's finding of operation of the motor vehicle. On February 27, 1992, at approximately 2:25 a.m., Patrolman Brian Jones of the Redding police department discovered the plaintiff's vehicle on Route 107 in Redding. According to the police report filed by Jones, the plaintiff's vehicle had been involved in a major accident. When Jones approached the stationary vehicle, he found the plaintiff in the operator's seat with his seat belt on. Jones

shall be prior to the effective date of the suspension. Upon a showing of good cause, the commissioner may grant one continuance for a period not to exceed ten days. If a continuance is granted, the commissioner shall extend the validity of the temporary operator's license or nonresident operating privilege issued pursuant to subsection (c) of this section for a period not to exceed the period of such continuance. The hearing shall be limited to a determination of the following issues: (1) Did the police officer have probable cause to arrest the person for . . . operating a motor vehicle while under the influence of intoxicating liquor or drug or both . . . (2) was such person placed under arrest; (3) did such person . . . submit to such test or analysis and the results of such test or analysis indicated that at the time of the alleged offense the ratio of alcohol in the blood of such person was ten-hundredths of one per cent or more of alcohol, by weight; and (4) was such person operating the motor vehicle. . . .

"(g) If, after such hearing, the commissioner finds on any one of the said issues in the negative, the commissioner shall reinstate such license or operating privilege. If, after such hearing, the commissioner does not find on any one of the said issues in the negative or if such person fails to appear at such hearing, the commissioner shall affirm the suspension contained in the suspension notice for the appropriate period specified in subsection (h) of this section. . . .

"(h) The commissioner shall suspend the operator's license . . . . and revoke the temporary operator's license . . . issued pursuant to subsection (c) of this section . . . for a period of . . . (2) one year if such person has previously had his operator's license . . . suspended under this section . . . ."

smelled alcohol on the plaintiff's breath and clothes and observed that the plaintiff was very nervous and overly polite. The plaintiff told Jones that he had been arrested one year earlier for driving while intoxicated. Jones removed the plaintiff from the vehicle and administered field sobriety tests to him, which he failed. On the basis of his observations, Jones arrested the plaintiff for operating a vehicle while under the influence of intoxicating liquor or drugs or both in violation of General Statutes § 14-227a.

On March 6, 1992, the defendant notified the plaintiff that his driver's license was to be suspended for one year, effective April 2, 1992, pursuant to General Statutes § 14-227b (d). The plaintiff then requested and was subsequently given an administrative hearing on the proposed license suspension pursuant to General Statutes § 14-227b (d) and (f).[2] On March 23, 1992, a hearing was held before Mark Gutis, a department of motor vehicles hearing officer. The only evidence presented at the hearing was an "Officer's DWI Arrest and Alcohol Test Refusal or Failure Report" (A-44 form),[3] signed by Jones. Neither the plaintiff nor Jones testified at the hearing.

Gutis issued his decision on March 24, 1992, finding that (1) the police officer had probable cause to arrest the plaintiff for violating General Statutes § 14-227a, (2) the plaintiff was placed under arrest, (3) the plaintiff submitted to the intoximeter tests, which indicated that his blood alcohol content was 0.1 percent or greater at the time of the offense, and (4) the plaintiff was oper-

---

[2] See footnote 1.

[3] The A-44 form sets forth, inter alia, the circumstances surrounding Jones' discovery of the plaintiff's vehicle, his observations of the plaintiff, the time of the discovery, the plaintiff's performance on the field sobriety tests, the plaintiff's advisement of rights and consent to the intoximeter tests, the time and results of the intoximeter tests, and the fact that the plaintiff's vehicle was towed from the scene.

ating the motor vehicle at the time of the accident. See General Statutes § 14-227b (f). On the basis of these findings, the defendant suspended the plaintiff's driver's license for one year pursuant to General Statutes § 14-227b (h) (2).

The plaintiff appealed his suspension to the Superior Court, claiming that there was insufficient evidence to support the hearing officer's finding that the plaintiff was operating the vehicle. The court dismissed the plaintiff's appeal finding that the evidence in the record was sufficient for the hearing officer to determine that the plaintiff had been operating the vehicle. This appeal followed.

I

The plaintiff first claims that the trial court improperly applied the clearly erroneous standard in reviewing the defendant's finding that the plaintiff was operating the car. The plaintiff contends that the determination of operation of a motor vehicle is a question of law because it involves the application, interpretation and construction of § 14-227b. We disagree.

Proof of operation is a factual determination. See, e.g., *State* v. *Hanusiak,* 4 Conn. Cir. Ct. 34, 46, 225 A.2d 208 (1966) (§ 14-227b contemplates that the trier of facts shall make the finding of operation). "[A]n agency's factual and discretionary determinations are to be accorded considerable weight by the courts." *Lieberman* v. *State Board of Labor Relations,* 216 Conn. 253, 262, 579 A.2d 505 (1990). The factual findings of the commissioner of motor vehicles must be affirmed by the trial court unless they are "clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record." General Statutes § 4-183 (j) (5). The trial court in this case applied the proper standard of review.

## II

The plaintiff next claims that the trial court improperly concluded there was sufficient evidence in the record to determine that he was operating the vehicle. We disagree.

We note at the outset that "[j]udicial review of the commissioner's action is governed by the Uniform Administrative Procedure Act (General Statutes . . . §§ 4-166 through 4-189), and the scope of that review is very restricted. . . ." (Internal quotation marks omitted.) *Buckley* v. *Muzio,* 200 Conn. 1, 3, 509 A.2d 489 (1986), quoting *Lawrence* v. *Kozlowski,* 171 Conn. 705, 707–708, 372 A.2d 110 (1976), cert. denied, 431 U.S. 969, 97 S. Ct. 2930, 53 L. Ed. 2d 1066 (1977). "In cases involving administrative appeals it is not the function of this court, nor was it the function of the trial court, to retry the case or to substitute its judgment for that of the administrative agency." *Madow* v. *Muzio,* 176 Conn. 374, 376, 407 A.2d 997 (1978); *C & H Enterprises, Inc.* v. *Commissioner of Motor Vehicles,* 176 Conn. 11, 12, 404 A.2d 864 (1978); *DiBenedetto* v. *Commissioner of Motor Vehicles,* 168 Conn. 587, 589, 362 A.2d 840 (1975); see General Statutes § 4-183 (j).

"In order to prevail in this appeal, the plaintiff bears the burden of proving that substantial rights possessed by [him] have been prejudiced because the decision to suspend [his] right to operate a vehicle in this state was 'clearly erroneous in view of the reliable, probative, and substantial evidence on the whole record.'" *Schallenkamp* v. *DelPonte,* 29 Conn. App. 576, 580, 616 A.2d 1157 (1992), cert. granted on other grounds, 224 Conn. 928, 619 A.2d 851 (1993); *Lawrence* v. *Kozlowski,* supra, 713–14; see General Statutes § 4-183 (j) (5). Our review of the defendant's decision requires us to determine whether there is substantial evidence in the

administrative record to support the defendant's findings of basic fact and whether the conclusion drawn from those facts is reasonable. *Schallenkamp* v. *DelPonte,* supra, 580–81; see also *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* 216 Conn. 627, 639, 583 A.2d 906 (1990). "Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred." (Internal quotation marks omitted.) *Connecticut Light & Power Co.* v. *Department of Public Utility Control,* supra, 639–40; see also *Schallenkamp* v. *DelPonte,* supra, 581; *Marshall* v. *DelPonte,* 27 Conn. App. 346, 352, 606 A.2d 716 (1992). If the defendant's determination to suspend the plaintiff's license pursuant to § 14-227b is supported by substantial evidence in the record, that determination must be sustained. *Schallenkamp* v. *DelPonte,* supra; *Clark* v. *Muzio,* 40 Conn. Sup. 512, 514, 516 A.2d 160 (1986), aff'd, 14 Conn. App. 212, 540 A.2d 1063, cert. denied, 208 Conn. 809, 545 A.2d 1105 (1988).

The plaintiff claims that there was not sufficient evidence in the record for the defendant to determine that he was operating the vehicle. To support his claim, the plaintiff relies on *State* v. *DeCoster,* 147 Conn. 502, 162 A.2d 704 (1960). *DeCoster* involved a criminal prosecution for operating a vehicle while under the influence of intoxicating liquor in violation of General Statutes (1958 Rev.) § 14-227 (now § 14-227a). Police found the defendant in *DeCoster* intoxicated and slumped over the steering wheel of his car with the key in the ignition and the motor off. Id., 504. The car was damaged on the right side and both tires on that side were flat; four signs directing traffic to "Go Right" at a nearby rotary traffic circle had been knocked down. Id. No one had seen the defendant operating his car and there was no evidence to show how long it had been stationary.

The *DeCoster* court found that the state had failed to demonstrate the critical nexus between intoxication and operation; the state could not show how much time had transpired between the moment the defendant last operated his car and the officer's discovery of the defendant sitting in it. Id., 505. Thus, the court held that there was insufficient evidence to find beyond a reasonable doubt that the defendant had operated his car while under the influence of intoxicating liquor. Id.

The plaintiff's reliance on *DeCoster* is misplaced. This case, unlike *DeCoster,* involves an administrative license revocation proceeding under § 14-227b, not a criminal prosecution under General Statutes § 14-227a. "In a criminal case, the state must prove each element of the crime charged beyond a reasonable doubt. . . . In an administrative action, however, the agency need only produce probative and reliable evidence to ensure that the proceedings are fundamentally fair." (Citations omitted.) *Marshall* v. *DelPonte,* supra, 351. Thus, a hearing officer's decision to revoke a drivers license is not subject to the "far higher" burden of proof that is required for a criminal conviction of driving under the influence. Id.

The *DeCoster* decision is also distinguishable from the present case on its facts. In this case, unlike in *DeCoster*, the plaintiff was found strapped into the driver's seat by his seat belt. The defendant could reasonably have inferred from this fact that the plaintiff had been operating the vehicle at the time of the accident that left his vehicle immobilized and in need of a tow. In addition, the plaintiff admitted to police that he had been arrested a year before for driving while intoxicated. This statement, coupled with the plaintiff's nervous demeanor, indicated a "consciousness of guilt," that the defendant could consider in determining whether the plaintiff had been operating the vehicle. See, e.g., *State* v. *Burak,* 201 Conn. 517, 533, 518 A.2d

639 (1986). Furthermore, the plaintiff's attorney stated that the plaintiff lost his eyeglasses during the accident, one more fact to support the inference that the plaintiff, the sole occupant of the vehicle, was the operator at the time of the accident.

The record contains substantial evidence supporting the defendant's finding that the plaintiff had operated the vehicle. Thus, the trial court was correct in holding that the defendant's finding was not clearly erroneous in view of the reliable, probative and substantial evidence on the whole record.

The judgment is affirmed.

In this opinion the other judges concurred.